**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

────────────────────────────

BRIAN K.,

                                        Plaintiff,                    5:24-CV-26
                    v.                                                (CFH)


COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

────────────────────────────

**APPEARANCES:**                          **OF COUNSEL:**

Meggesto, Crossett & Valerino, LLP        KIMBERLY A. SLIMBAUGH, ESQ.
511 East Fayette Street
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration            KRISTINA D. COHN, ESQ.
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM DECISION AND ORDER[1]

        Brian K.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("the Commissioner")

denying his application for supplemental security income benefits.  See Dkt. No. 1.

───────────────────

[1] The parties consented to direct review of this matter by a magistrate judge pursuant to 28 U.S.C.
§ 636(c), Fed. R. Civ. P. 73, Local Rule 72.2(b), and General Order No. 18.  See Dkt. Nos. 4, 6.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the
Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018
to better protect personal and medical information of non-governmental parties, this Memorandum-
Decision and Order will identify plaintiff's last name by initial only.

Plaintiff moves for judgment on the pleadings. <u>See</u> Dkt. No. 9.[3]  The Commissioner cross-moves for judgment on the pleadings. <u>See</u> Dkt. No. 11.[4]  For the reasons stated below, plaintiff's motion is denied, the Commissioner's motion is granted, and the Commissioner's decision is affirmed.

## I. Background and Procedural History

On February 15, 2018, plaintiff filed a Title XVI application for supplemental security income benefits, alleging a disability onset date of October 9, 2015. <u>See</u> T. at 173-78.[5]  Plaintiff asserted that he was disabled due to "autism/pervasive developmental disorder; Tourette syndrome; ADHD combined type; asthma; and benign rolandic epilepsy/seizures." <u>Id.</u> at 62-63.  The Social Security Administration ("SSA") denied the claim on May 3, 2018, and plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). <u>See</u> <u>id.</u> at 77, 89.  ALJ Robyn L. Hoffman held a hearing, and on November 15, 2019, issued an unfavorable decision. <u>See</u> <u>id.</u> at 15-26, 34-61.  The Appeals Council denied plaintiff's request for review of the ALJ's decision, and plaintiff filed an action in this Court. <u>See</u> <u>id.</u> at 1-6, 584-85.  Plaintiff and the Commissioner stipulated to a remand for further proceedings. <u>See</u> T. at 588-89.  On September 22, 2023, ALJ Hoffman held another hearing. <u>See</u> <u>id.</u> at 483-97.  On

---

[3] Citations to the parties' briefs refer to the pagination generated by CM/ECF, located at the header of each page.

[4] This matter has been treated in accordance with General Order No. 18.  Under General Order 18, once issue has been joined, an action such as this is considered procedurally as if cross motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[5] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. <u>See</u> Dkt. No. 8.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page, not the pagination generated by CM/ECF.

October 11, 2023, the ALJ issued an unfavorable decision.  See id. at 458-70.  Plaintiff timely commenced this action before the Court on January 8, 2024.  See Dkt. No. 1.

## II. Legal Standards

### A. Standard of Review

Sentence four of 42 U.S.C. § 405(g) grants the court the authority "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the Commissioner's final decision, a district court may not determine de novo whether an individual (the "claimant") is disabled.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  The district court may reverse the Commissioner's final decision only if the ALJ failed to apply the correct legal standards or support the decision with substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)) (internal citations omitted). This is "a very deferential standard of review," meaning that once an ALJ finds facts, the court can reject them "only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citation, emphasis, and internal quotations marks omitted); see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (reminding that it is for the ALJ to weigh conflicting evidence in the record) (citing Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d

Cir. 1997)).  Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the court should not affirm even though the ultimate conclusion is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the ALJ applied the correct legal standards, and substantial evidence supports the decision, the court must uphold the Commissioner's conclusion even if the evidence is "susceptible to more than one rational interpretation."  Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (quoting McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014)).

### B. Determination of Disability

Under 42 U.S.C. § 423, every individual who is under a disability shall be entitled to a disability benefits.  42 U.S.C. § 423(a)(1)(E).  Disability is defined as is the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  Id. § 423(d)(1)(A).  A disabling impairment is an affliction that is so severe it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  See id. § 423(d)(2)(A).  Such impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques."  Id. § 423(d)(3); see also Ventura v. Barnhart, No. 04-cv-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) ("Determinations of severity are based on objective medical facts, diagnoses or medical opinions inferable from these facts, subjective complaints of pain or disability, and educational background,

age, and work experience.") (citing, inter alia, Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

To determine whether the claimant is entitled to disability benefits, a five-step evaluation, based on 20 C.F.R. §§ 404.1520 and 416.920, is used:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in [20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")]. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

The plaintiff bears the burden of proof at the first four steps, and the Commissioner bears the burden at step five to show that the plaintiff can engage in

gainful employment somewhere.  See DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d

Cir. 1998) (citing Berry, 675 F.2d at 467).

### III. The ALJ's Disability Evaluation

The ALJ first noted that plaintiff was born on October 9, 1996, had not attained

age 22 as of the alleged onset date of October 9, 2015, and has not engaged in

substantial gainful activity.  See T. at 461.  At step two, the ALJ found that plaintiff had

the following severe impairments: "autism, social anxiety disorder, history of Tourette's

syndrome, and history of attention deficit hyperactivity disorder (ADHD)."  Id. at 462.  At

step three, the ALJ determined that plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of any Listing.  See id.  The

ALJ then concluded that plaintiff retained the residual functional capacity ("RFC") to

perform a full range of work at all exertional levels, but except that he should:

> [W]ork at simple, routine and repetitive tasks[;] work in a low
> stress job defined as occasional decision-making, occasional
> judgment required, and occasional changes in the work
> setting[;] work at goal-oriented work rather than production
> pace rate work[; and] have occasional interaction with co-
> workers and supervisors, and incidental interaction with the
> public[, defined] as more than never and less than occasional,
> [i.e.] the job should not involve direct interaction with the
> public, but the claimant does not need to be isolated away
> from the public.

Id. at 464.  At step four, the ALJ determined that plaintiff had no past relevant work.

See id. at 468.  At step five, considering the vocational expert ("VE") testimony and

plaintiff's RFC, age, and education, the ALJ concluded that plaintiff could perform the

following jobs existing in significant numbers in the national economy: (1) Retail

Stocker, DOT # 922.687-058, with 426,000 jobs; (2) Cleaner II, DOT # 919.687-014,

with 311,940 jobs; and (3) Marker II, DOT # 920.687-126, with 250,000 jobs.  See id. at

469.  The ALJ determined that plaintiff "has not been under a disability, as defined in the Social Security Act, from October 9, 2015, through the date of this decision[.]"  Id.

## IV. Discussion

Plaintiff argues that the ALJ: (A) erred in evaluating the medical opinions of two examining psychologists and a third psychologist who reviewed the record at the initial stage; and (B) failed to support the RFC with substantial evidence.  See Dkt. No. 9 at 17-23.  Plaintiff contends that the Commissioner's decision should be remanded for the calculation of benefits or for further administrative proceedings.  See id. at 24.

The Commissioner argues that ALJ Hoffman "properly evaluated medical source opinion evidence when assessing plaintiff's RFC."  Dkt. No. 11 at 2.  Thus, the Commissioner contends that the decision should be affirmed.  See id.

### A. Medical Opinions of Three Psychologists

### 1. Legal Standards

### a. "Special Technique" for Alleged Mental Impairments

Where an alleged disability involves a medically-determinable mental impairment, the ALJ is to use a "special technique" that rates the degree of functional limitation caused by the mental impairment.  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008); 20 C.F.R. § 416.920a(b).  The regulations identify "four broad functional areas" that examine the claimant's ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  Id. § 416.920a(c)(3).  These areas are rated on a five-point scale: "[n]one, mild, moderate, marked, and extreme."  Id. § 416.920a(c)(4). If the claimant's impairments show "marked" limitations in two of the functional areas or an "extreme"

limitation in one area, the claimant can be found disabled under the Listings at step three.  See Damon J. v. Comm'r of Soc. Sec., No. 21-cv-28 (JLS), 2023 WL 2088349, at *3 (W.D.N.Y. Feb. 17, 2023) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(A)(2)(b)).  Conversely, "if the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the [ALJ] generally will conclude that the claimant's mental impairment is not 'severe'" at step two.  Kohler, 546 F.3d at 266; see also 20 C.F.R. § 416.920a(d)(1).

### b. Medical Opinions

For claims filed on or after March 27, 2017, an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources."  20 C.F.R. § 416.920c(a).  Instead, an ALJ is to evaluate medical opinions and PAMFs by considering their "persuasiveness."  See id.  In determining how "persuasive" a medical opinion or PAMF is, an ALJ must "consider" the following factors: "supportability, consistency, treatment relationship, specialization, and 'other factors.'"  Id. § 416.920c(a) and (c)(1)-(5).  However, in many cases, the ALJ only need "explain" how the supportability and consistency factors were considered, as they are "the most important factors."  Id. § 416.920c(b)(2); see also id. § 416.920c(b)(2)-(3) (stating that the ALJ need not discuss the remaining factors unless the ALJ finds "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same").

For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(1); see also Kathleen A. v. Comm'r of Soc. Sec., No. 3:20-cv-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (noting that the supportability analysis "focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'") (quoting Carmen M. v. Comm'r of the Soc. Sec., No. 20-cv-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)).  For "consistency," the regulations state: "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be."  20 C.F.R. § 416.920c(c)(2); see also Kathleen A., 2022 WL 673824, at *5 ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.") (quoting 20 C.F.R. § 404.1520c(c)(2); citing Galo G. v. Comm'r of the Soc. Sec., No. 20-cv-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)).

ALJs are not required to "'state on the record every reason justifying a decision' and '[are] not required to discuss every single piece of evidence submitted.'"  Ryan v. Comm'r of Soc. Sec., No. 21-2947-cv, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting Brault, 683 F.3d at 448).  However, they must articulate how persuasive they found the medical opinions and PAMFs.  See 20 C.F.R. § 416.920c(b). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'"  Rivera v.

Comm'r of Soc. Sec., No. 19-cv-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting Andrew G. v. Comm'r of Soc. Sec., No. 3:19-cv-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020)), report and recommendation adopted 2021 WL 134945 (Jan. 14, 2021); but see Jennifer A. v. Comm'r of Soc. Sec., No. 1:22-cv-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.") (quoting Eric G. v. Comm'r of Soc. Sec., No. 5:21-cv-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023).

### 2. Analysis

Regarding the mental impairments, the ALJ noted that plaintiff's autism, social anxiety disorder, Tourette's, and ADHD were severe but concluded that they did not meet any of the Listings. See T. at 461-62. Under Paragraph B, the ALJ found that plaintiff was moderately limited in his abilities to: (1) understand, remember, or apply information; (2) interact with others; and (3) concentrate, persist, or maintain pace. See id. at 462-63 In adapting and managing oneself, the ALJ found plaintiff to be mildly limited. See id. The ALJ then assigned an RFC with no exertional limitations but with multiple non-exertional limitations based on plaintiff's mental impairments. See id. at 464.

In making these Paragraph B and RFC findings, the ALJ noted, among other things, the medical opinions from state agency psychiatric consultant Dr. H. Ferrin, Ph.D.; examining psychologist Dr. Jeanne A. Shapiro, Ph.D., and psychologist Dr. Timothy Dempsey, Ph.D. See T. at 467-68 (citing id. at 67-74, 337-341, 346-352) .

Plaintiff challenges the ALJ's assessment of each of these medical opinions, as well as the RFC formulation.  See Dkt. No. 9.

### a. Dr. Shapiro

Dr. Shapiro examined plaintiff on April 16, 2018.  See T. at 337-341.  She noted plaintiff's diagnoses, symptom statements, and educational and employment history, as well as the results from the April 16th mental status exam.  See id. at 337-38.  Dr. Shapiro opined that plaintiff had moderate-to-marked limitations in "interacting adequately with supervisors, coworkers, and the public" and in "sustaining concentration and performing a task at a consistent pace depending upon his level of anxiety."  Id. at 340.  Dr. Shapiro also opined that plaintiff had (1) moderate limitations in "understanding, remembering, or applying complex directions and instructions" and "in regulating emotions, controlling behavior, and maintaining wellbeing"; (2) and mild limitations in "using reasoning and judgment to make work-related decisions"; and (3) no limitations in "understanding, remembering, or applying simple directions and instructions," "sustaining an ordinary routine and regular attendance at work," "maintaining personal hygiene and wearing appropriate attire," and "being aware of normal hazards and taking appropriate precautions."  Id.

The ALJ was somewhat persuaded by this opinion, finding Dr. Shapiro's "none," "mild," and "moderate" opinions to be supported by the doctor's April 2018 exam results and consistent with the overall record.  See T. at 467.  However, the ALJ found the two moderate-to-marked limitations to be "[un]supported by the findings from examination or consistent with the overall record."  Id.  The ALJ cited Dr. Shapiro's findings from the April 2018 exam that plaintiff appeared "relaxed and comfortable . . . , cooperative with

adequate social skills, manner of relating, and overall presentation," "exhibited

appropriate eye contact and normal posture and motor behavior," had intact attention

and concentration, and "was able to complete the evaluation."  Id. (citing id. at 339).

Thus, the ALJ was required to explain why the marked portions of Dr. Shapiro's opinion

were rejected.  See Dotson v. Berryhill, No. 17-cv-129 (FPG), 2018 WL 3064195, at *3

(W.D.N.Y. Jun. 21, 2018) ("[Where] an ALJ adopts only portions of a medical opinion,

he must explain why he rejected the remaining portions.")).

    Plaintiff contends that the ALJ's assessment is not supported by substantial

evidence because it contains error, as it does not consider the consistency of Dr.

Shapiro's opinion with the rest of the record.  See Dkt. No. 9 at 17, 20.  Plaintiff also

argues that courts in this Circuit caution against relying on individual mental status

exams to assess mental impairments because they "only reveal the patient's mental

state 'at the time of the examination and do not consider symptoms the patient may

experience outside of that brief period of time.'"  See id. at 20 (quoting Loucks v.

Kijakazi, 2022 WL 2189293, at *2 (2d Cir. Jun. 17, 2022)).

    Plaintiff is incorrect insofar as he contends that the ALJ did not consider

consistency, as the decision clearly states that the moderate-to-marked limitations were

not "consistent with the overall record."  T. at 468.  The ALJ explained that she rejected

the moderate-to-marked limitations not just based on Dr. Shapiro's mental status exam

in April 2018 (i.e. its lack of support), but also on treatment records from 2019 to 2023

that did not record plaintiff "acting inappropriately during treatment visits or being

distracted."  Id. (citing id. at 357-59, 822-866).  Additionally, earlier in the decision, the

ALJ noted plaintiff's self-reports of occasional problems interacting with others but no

problems with authority figures, as well as problems paying attention but ability to play basketball and drive.  See id. at 463 (citing id. at 237-46).  The ALJ also highlighted plaintiff's hearing testimony and medical evidence that reflected (1) plaintiff's academic and social struggles in school but completion of high school in 2015; (2) his statements to his doctors (and his mother's concurrence) that his irritability and ADHD symptoms were well controlled by his medications; (3) Dr. Ferrin's medical opinion, which assessed no more than moderate limitations in plaintiff's mental functioning.  See id. at 465 (citing id. at 36-60, 67-74, 216-25, 316-20, 326, 337-38, 843).  This discussion demonstrates that the decision does not contain error regarding Dr. Shapiro's opinion, as the ALJ addressed both supportability and consistency.  20 C.F.R. § 416.920c(c)(1)-(2); see also Kathleen A., 2022 WL 673824, at *4-5.

Further, these records provide substantial evidence supporting the ALJ's decision to reject the moderate-to-marked limitations opined by Dr. Shapiro.  See Cynthia A. E. v. Comm'r of Soc. Sec., No. 5:22-cv-974 (MAD/DEP), 2023 WL 9116628, at *5 (N.D.N.Y. Oct. 17, 2023) (affirming rejection of doctor's opined moderate-to-marked limitations in the plaintiff's ability to "interact adequately with supervisors, coworkers and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior and maintain well-being" based on the plaintiff's ability to communicate with health providers (despite being emotional at times), ability to conduct relevant daily activities, and opinion in the PAMF that the plaintiff had no greater than moderate mental limitations), report and recommendation adopted 2023 WL 8432332 (N.D.N.Y. Dec. 5, 2023); Riaz v. Comm'r of Soc. Sec., No. 20-cv-8418 (JPC/SLC), 2022

13

WL 6564018, at *17 (S.D.N.Y. Aug. 5, 2022) (finding substantial evidence supported

rejection of doctor's opined marked limitations in the plaintiff's abilities to "sustain an

ordinary routine and regular attendance at work . . ., regulate her emotions, [and] control

her behavior" based in part on the doctor's own exam findings), report and

recommendation adopted 2022 WL 4482297 (S.D.N.Y. Sept. 27, 2022).

### b. Dr. Ferrin

Dr. Ferrin reviewed plaintiff's records at the initial consideration stage on April 30,

2018, assigning mild and moderate findings under Paragraph B.  See T. at 67-78.  Dr.

Ferrin found that plaintiff "would have difficulty understanding/remembering highly

complex or highly technical tasks, but [can] understand and remember simple and

detailed instructions"; "is able to sustain a normal workday and workweek and maintain

consistent pace"; "may benefit from an environment [precluding] intensive interaction

with the public but appears capable of routine interactions with coworkers and

supervisors"; and "can adapt to changes in a routine work setting and can use

appropriate judgment to make work-related decisions."  See id. at 73.  The ALJ was

persuaded by Dr. Ferrin's opinions, noting the supportive explanations he provided and

the consistency of these limitations with the record evidence.  See id. at 467.

Plaintiff contends that the ALJ's reliance on Dr. Ferrin's opinion is error, as the

doctor only had access to the record up through the date of the initial review in April

2018.  See Dkt. No. 9 at 21.  However, as the Commissioner correctly argues, an ALJ

need not disregard a medical opinion just because evidence was entered into the record

post-dating the opinion.  See Dkt. No. 11 at 11 (citing Camille v. Colvin, 652 F. App'x

25, 28 n.4 (2d Cir. 2016) ("No case or regulation [cited by the plaintiff] imposes an

unqualified rule that a medical opinion is superseded by additional material in the record[.]")).  Instead, the key inquiry is the consistency of the opinion with the later-generated evidence.  See Camille, 652 F. App'x at 28 n.4.

Here, the ALJ acknowledged that Dr. Ferrin did not have access to later-generated  evidence, including Dr. Dempsey's 2019 opinion; however, the ALJ still found Dr. Ferrin's opined limitations were "consistent the overall record."  T. at 467.  This evidence cited by the ALJ included plaintiff's statements to Dr. Shapiro and his hearing testimony regarding his daily activities, and the results of multiple medical exams in 2018 and 2021.  See id. at 37-60, 339-40, 843-44, 848-49.  The Court also finds the ALJ relied on other evidence discussed earlier in the decision, as outlined in Section IV.A.2.a., infra.  See Wanda N. v. Comm'r of Soc. Sec., No. 6:21-cv-358 (TJM), 2022 WL 4376484, at *7 (N.D.N.Y. Sept. 22, 2022) (reminding that substantial evidence can be found to support an ALJ's conclusions where the court can glean the ALJ's rationale from the decision as a whole).  Thus, the Court finds no error in the ALJ's reliance on the older medical opinion, given its overall consistency with later-generated records and a lack deterioration in plaintiff's condition.  See Alexis M. v. Comm'r of Soc. Sec., No. 20-cv-963 (WMS), 2022 WL 765263, at *5 (W.D.N.Y. Mar. 14, 2022) (finding that the opinion was not stale due to subsequently submitted evidence when the ALJ appropriately determined that the evidence did not warrant further restriction or show deterioration in the plaintiff's condition); Kidd v. Comm'r of Soc. Sec., No. 18-cv-1217 (FPG), 2019 WL 1260750, at *3-4 (W.D.N.Y. Mar. 19, 2019) (same).

**c. Dr. Dempsey**

Dr. Dempsey conducted an examination of plaintiff across three medical appointments in 2019.  See T. at 281, 346-352.  On April 3, 2019, Dr. Dempsey discussed plaintiff's conditions with plaintiff's mother, noting that plaintiff did not attend the examination.  See id.  Dr. Dempsey opined that (1) plaintiff's general cognitive ability was borderline, he would experience difficulty in keeping up with his peers in situations that require verbal skills, and would have "trouble attending and holding information in short term memory"; (2) his ability to "sustain attention, concentrate, and exert mental control" was borderline; (3) he had an "ability to regulate his behavior [that was] substantially lower than his peers," including an inability to age-appropriately interact with peers, children, or other adults.  Id. at 349-51.  Dr. Dempsey noted that, because of plaintiff's "severe mood/emotional lability" resulting in disruptive behavior, he "shuts down and becomes completely emotionally and socially withdrawn."  Id. at 352.  The doctor concluded that because plaintiff's anxiety was chronic and unpredictable, he "presents as a significant risk within any vocational/employment setting" and was "unemployable . . . for the foreseeable future."  Id.

In the section resolving Dr. Dempsey's opinion, the ALJ noted the doctor's "unemployable" assertion.  T. at 468.  However, the ALJ was squarely within her authority to disregard this statement as an issue reserved for the Commissioner.  See 20 C.F.R. § 416.920b(c)(3)(i) (noting that statements that a claimant is disabled is an issue reserved to the Commissioner because it "would direct [the] determination or decision that [the claimant is or is not] disabled or blind within the meaning of the Act[.]").  The ALJ also stated that Dr. Dempsey's "other assessments have been given

consideration in assessing the appropriate B criteria and in the residual functional capacity."  T. at 468.

Plaintiff argues that this short assessment by the ALJ is error, as it does not indicate that the ALJ examined the supportability and consistency of Dr. Dempsey's opinion.  See Dkt. No. 9 at 23.  Plaintiff is correct that the regulations require an explanation on these two factors, as they are "the most important factors."  20 C.F.R. § 416.920c(b)(2); Rivera, 2020 WL 8167136, at *14 (noting that remand is required where an ALJ fails to explain the supportability and consistency factors when resolving a medical opinion).  However, courts have found that "[t]he ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis."  Jennifer A., 2023 WL 8654215, at *4; Eric G., 2023 WL 3004780, *4, n.1.

Here, the ALJ's statement about her consideration of Dr. Dempsey's "other assessments" for Paragraph B and RFC purposes, T. at 468, directs the Court to earlier portions of the decision.  See Brault, 683 F.3d at 447 (reminding that judicial review of social security cases requires examination of the entire record).  This discussion includes the ALJ's review of Dr. Dempsey's exams in March and April 2019 where plaintiff displayed (1) "borderline intellectual functioning [and] verbal reasoning," but "a higher-than-expected rate of forgetting" given the exam testing; (2) a borderline ability to concentrate during the exam; and (3) deficits in "conversation, eye contact, facial expression, and overall quality of rapport" that indicated plaintiff had "substantially reduced ability to regulate behavior."  T. at 466 (citing id. at 348-50).  This also includes much of the evidence discussed in the sections infra regarding the ALJ's resolution of

Drs. Shapiro's and Ferrin's opinions.  Briefly, the ALJ relied on Dr. Shapiro's April 2018 exam showing mostly mild and moderate limitations, see id. at 337-341; treatment records from 2019-2023 indicating plaintiff acted appropriately and was not distracted during medical visits, see id. at 357-59, 822-866; plaintiff's self-reports and hearing testimony of appropriate interaction with authority figures and ability to engage in relevant daily activities, see id. at 36-60, 237-46; plaintiff's successful completion of high school in 2015, see id. at 316-20; plaintiff's statements to medical providers that his symptoms were well managed with medications, see id. at 216-25, 326, 337-38, 843; and the medical opinion of Dr. Ferrin, who assessed no more than moderate limitations in plaintiff's mental functioning and who assigned an RFC similar to that formulated by the ALJ, see id. at 67-74.  See id. at 462-68.  The Court can glean the ALJ's consistency and supportability findings from the ALJ's citation to these records throughout the decision.  See Wanda N., 2022 WL 4376484, at *7 (citing John L. M. v. Kijakazi, No. 5:21-cv-368 (BKS/TWD), 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022)).  Thus, the Court finds no legal error in the ALJ's assessment of Dr. Dempsey's opinion.  See Jennifer A., 2023 WL 8654215, at *4 (finding no error in the ALJ's failure to use the terms supportability and consistency, where the court could glean the ALJ's rationale based on the decision's discussion of the evidence relied upon by the opining doctors).

Further, these records provide substantial evidence supporting the ALJ's findings on Dr. Dempsey's opinion.  The ALJ states that Dr. Dempsey's "other limitations have been considered" in the Paragraph B and RFC formulations.  T. at 468.  It is logical to conclude that the ALJ considered Dr. Dempsey's opined limitations to be in line with

moderate limitations and the RFC.  See Wanda N., 2022 WL 4376484, at *7.  Courts in

this circuit have found similar medical opinions to align with moderate findings and RFC

mental limitations.  See Lisa Marie C. v. Comm'r of Soc. Sec., No. 5:23-cv-1025

(GTS/TWD), 2024 WL 4350754, at *10 (N.D.N.Y. Sept. 3, 2024) (finding moderate and

moderate-to-marked limitations in regulating emotions, controlling behavior, and

maintaining well-being to be sufficiently incorporated into an RFC that restricted the

plaintiff to "simple, routine, and repetitive tasks in a work environment involving only

simple, work-related decisions" and "no more than occasional contact with supervisors,

coworkers and the public."), report and recommendation adopted 2024 WL 4347794

(N.D.N.Y. Sept. 30, 2024); Denise Marie T.-W. v. Comm'r of Soc. Sec., No. 1:22-cv-327

(JJM), 2024 WL 4162490, at *6 (W.D.N.Y. Sept. 12, 2024) (collecting cases and noting

that "[m]oderate limitations in some or all areas of mental functioning may be accounted

for in an RFC by limiting a plaintiff to simple, routine work and by limiting plaintiff's

interaction with others.").  To the extent Dr. Dempsey's opinions were intended to

indicate plaintiff was more restricted, the decision cites substantial evidence, as

discussed in Section IV.A.2.a. and 2.b, infra, rejecting such limitations. See Lawrence K.

v. Comm'r of Soc. Sec., No. 5:23-cv-496 (DNH/CFH), 2024 WL 4133823, at *3-8

(N.D.N.Y. Jul. 10, 2024) (affirming the ALJ's rejection of marked and extreme limitations

in sustaining concentration and pace, regulating emotions, controlling behavior, and

interacting with others, as opined by examining psychologist, where the ALJ noted

records showing that the plaintiff was cooperative in the psychologist's exam and with

other treatment providers, was able to perform relevant daily activities), report and

recommendation adopted 2024 WL 3823486 (N.D.N.Y. Aug. 15, 2024); Stephanie F. B.

v. Comm'r of Soc. Sec., No. 1:22-cv-311 (JJM), 2024 WL 4116263, at *4 (W.D.N.Y.

Sept. 9, 2024) (affirming the ALJ's rejection of marked limitations in the plaintiff's ability

to interact with others, regulate emotions, and control behavior in part because of other

doctors opined only moderate limitations, and varying evidence in the record as to the

plaintiff's severity that included normal mental status exams and normal activities of

daily living).

### B. Substantial Evidence and the RFC

### 1. Legal Standards

A claimant's RFC represents a finding of the range of tasks that can be

performed notwithstanding the impairments at issue.  See 20 C.F.R. § 416.945(a);

Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33 (2d Cir. 2013) (summary order).  To

properly ascertain an RFC, the ALJ must assess the claimant's exertional capabilities,

such as the ability to sit, stand, walk, lift, carry, push and pull.  See 20 C.F.R.

§ 416.945(b).  Nonexertional capabilities, including postural and manipulative limitations

and any limitations due to any medically-determinable mental impairments, must also

be assessed.  See id. § 416.945(b)-(c).

As with other steps of the sequential evaluation, an RFC determination is

informed by consideration of "all of the relevant medical and other evidence."  20 C.F.R.

§ 416.945(a)(3); Tankisi, 521 F. App'x at 33; see also Ferraris v. Heckler, 728 F.2d 582,

587 (2d Cir. 1984) (reminding that the RFC determination must be supported by

substantial evidence).  An ALJ's RFC conclusion need not "perfectly correspond with

any of the opinions of medical sources cited in [the] decision, [because an ALJ is]

entitled to weigh all of the evidence available to make an RFC finding that was

consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).  When formulating a claimant's RFC, the ALJ must specify those functions that the claimant can perform; conclusory statements concerning a claimant's capabilities will not suffice.  Martone, 70 F. Supp. 2d at 150 (citing Ferraris, 728 F.2d at 587).

### 2. Analysis

The ALJ formulated an RFC that only contained limitations due to plaintiff's mental impairments.  See T. at 464.  This included that plaintiff could only: (1) work at simple, routine and repetitive tasks in a low stress job requiring occasional decision-making, occasional judgment, and occasional changes in the work setting; (2) work at goal-oriented work rather than production pace rate work; and (3) have occasional interaction with co-workers and supervisors, and incidental interaction with the public, defined as more than never and less than occasional, [i.e.] no direct interaction with the public but no need for complete isolation from the public.  See id.  This RFC is based on the evidence in the record, as discussed infra. See id. at 462-68.

Given that the Court finds no error in the ALJ's assessment of the medical opinions, and no other points of error were alleged by plaintiff, the Court finds substantial evidence supports the RFC.  Denise Marie T.-W, 2024 WL 4162490, at *6; Lisa Marie C., 2024 WL 4350754, at *10; Lawrence K., 2024 WL 4133823, at *10; Stephanie F. B., 2024 WL 4116263, at *4-6; Cynthia A. E., 2023 WL 9116628, at *8.  To the extent plaintiff cites to other evidence in the record, the Court reminds that the ALJ is the finder of fact, and the Court is required to uphold the decision even if the evidence is "susceptible to more than one rational interpretation."  Schillo, 31 F.4th at 74.

### V. Conclusion

Wherefore, having carefully considered the record herein and the arguments before the Court, for the reasons stated herein, it is hereby:

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**, and plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 2, 2025
        Albany, New York

Christian F. Hummel
U.S. Magistrate Judge